HARDY, Judge.
This is a compensation suit in which plaintiff claimed an award for total and permanent disability. After trial there was judgment in favor of plaintiff at the rate of $28.08 per week for the duration of his disability, not exceeding 400 weeks, subject to credit for compensation paid over a period of 31 weeks. From this judgment defendants, a commercial partnership and the individual partners theréof and the compensation insurance carrier, have appealed.
Plaintiff’s original petition, filed February 8, 1955, alleged that he sustained an accidental injury on March 31, 1954, while engaged in unloading wood crates of building slate weighing 150 to 200 pounds; that his injury was manifested by a sharp, jerking pain in the center of. his shoulders, which radiated up the back of his neck and head and down to his lower back area; that, as a result of the accidental strain, he sustained ,a partial dislocation of the seventh cervical vertebra and resulting pressure and damage to the spinal cord and nerves and severe sprain of the muscles and ligaments of the lower back and shoulders, all of which has caused his permanent and total disability to perform manual labor.
By supplemental and amended petition filed April 11, 1955, plaintiff alleged that on January 20, 1954, while in the same employ and engaged in unloading bricks, he fell between his truck and a “stack of bricks”, striking his upper abdomen, as the result of which he suffered considerable pain in the abdomen and in the vicinity of the left inguinal area ‘of the body and the left testicle; that he was confined to-bed for a period of three days, his injury being diagnosed as a contusion of the abdominal wall. Plaintiff further alleged that as a result of the accident of March 31st, fully set forth in his original petition, the condition of his, abdominal injury was aggravated to the extent that it resulted in an epigastric hernia, which development has caused him to be totally and permanently disabled.
Answers filed on behalf of all defendants to both petitions admitted the accident of March 31, 1954, but affirmatively averred that plaintiff had completely recovered therefrom on or before the date of November 9, 1954, at which time compensation payments were discontinued. Answer to plaintiff’s supplemental petition generally denied the allegations thereof and asserted a plea of prescription as to any claim resulting from the alleged accident of January 20, 1954. Additionally, the defendant, Liberty Mutual Insurance Company, denied any liability by reason of the alleged accident of January 20, 1954, on the ground that it was not then the insurer of the defendant employer.
The only issue which is tendered by this appeal involves the factual determination of the extent, nature and duration of plaintiff’s disability.
Examination of the record is convincing on the point that plaintiff suffered a neck and back sprain as the result of the accident of March 31, 1954, and by reason of which injury he received payments of compensation for a period of thirty-one weeks, such payments being discontinued by the insurer on November 9, 1954, on .the ground that plaintiff had recovered and was able, as of that date, to return to work. We think this position is abundantly supported by the vast preponderance of the medical testimony. This expert testimony was tendered by testimony or deposition of eleven physicians. Additionally, the written report of the doctor who first examined plaintiff after the accident of March 31st was introduced on behalf of all parties by stipulation of counsel. Careful examination of the testimony of these expert witnesses completely fails to substantiate plaintiff’s claims of total permanent disability resulting from the back injury sustained on March 31, 1954.
In consideration of the fact that our evaluation of the expert testimony in this case has led us to. an opposite conclusion from that of our learned brother of the district *785 court, we think it advisable, even at the risk of involving this opinion in a mass of details, to set forth the basis of our appreciation of this testimony.
In this connection, in order to avoid repetition, we will take occasion to make note of the testimony bearing upon both of the disabilities claimed by plaintiff, that is, the back injury and the epigastric hernia. For the sake of consistency, we set forth below the analysis of this testimony, in chronological order with relation to the first examination by each of the consulting physicians. -
Following the accident of January 20, 1954, plaintiff was examined by Dr. Kirby Roy of Marksville, who treated plaintiff January 20th, 21st and 23rd for the injuries which he diagnosed as contusion of the abdomen. Dr. Roy testified that plaintiff did not have a hernia at thib time.
Following the accident of March 31, 1954, plaintiff was examined and treated by Dr. W. R. Hargrove, a general practitioner of Oakdale, whose written report, furnished to Dr. Abramson of Marksville, is incorporated in the record and which we quote in its entirety as follows:
“Subject patient was injured while working on the Edward’s house in this city. He has some pain and tenderness in the cervico-thoracic region pin- ' pointing over the 7th cervical vertebra and radiating down to about the 3rd ■ thoracic vertebra. It seems that his neck was jerked forward accidentally while unloading bundles of slate which were quite heavy.
“There is a very slight subluxation of the 7th cervical on the 1st thoracic, vertebra which is visible in the oblique film, which I am sending. There is also a small amount of arthritic changes in this area and a very slight nárrow-ing of the disc which could be the angulation in which the film was taken.
“I have advised him, however, that he should have hospitalization and head halter traction applied for 3 to 4 days and if .complete relief was received by this treatment a cervical brace should be worn for a few weeks until complete correction has been attained. If no relief is .derived from the traction, then I think it wise that he see an orthopedic specialist. I did try manual traction on his neck for a short while and he received much relief while the traction was being applied.”
On April 3, 1954, plaintiff was first examined by Dr. Albert M. Abramson, a general practitioner of Marksville, to whom the patient had been referred by Dr. Har-grove. We think it significant that this witness was not called by plaintiff but was summoned and tendered as a witness on behalf of defendant. Dr. Abramson testified that he treated plaintiff from April 3rd to June 17, 1954, during which time plaintiff made forty-eight visits to his office. Dr. Abramson did not find anything which would substantiate Dr. Hargrove’s diagnosis, and advised plaintiff to consult Dr. Banks, an orthopedic surgeon of Alexandria'. Dr. Abramson diagnosed plaintiff’s injury as a sprain of the neck in the cervical area, and he testified that plaintiff never, at any time, made any complaints of pain in the abdomen nor mentioned any symptoms indicative of the existence of a hernia.
Apparently in response to Dr. Abramson’s suggestion, plaintiff consulted Dr. T. E. Banks, Jr. of Alexandria, a specialist in orthopedic surgery, who made an examination on April 5, 1954 and diagnosed plaintiff’s affection as traumatic myositis, recommending conservative treatment, consisting of support to the neck and head. The witness testified that he thought this nature of treatment and “a little time” should be all that was necessary for recovery. This witness also saw the plaintiff on the occasion of a visit to Marksville and, again, in his office in Alexandria on August 16, 1954. This August consultation resulted from a recommendation of Dr. Forman of Baton Rouge. The witness testified he read Dr. Forman’s report and “could not determine from this report the exact treatment that he had1 in mind and could not find any findings to treat.. I thought he had recovered at that time.”
*786 Plaintiff was examined by Dr. ,P. M. Davis, Jr. of Alexandria, a specialist in orthepedic surgery, on April 29, 1954. After physical and x-ray examinations this witness was of the opinion that plaintiff had evidence of a mild sprain of the muscles of the neck and possibly the structure of the neck and upper dorsal spine. Plaintiff was again examined by this witness on May 28, 1954, at which time the doctor found no objective evidence of difficulty with the back and neck. Specifically he stated:
“It was felt at that time that the patient could return to work if he so desired, and I gave him two weeks to get back in full hard labor.”
On June 26, 1954, plaintiff was examined by Dr. Duane Forman, a neurosurgeon of Baton Rouge, to whom he had been referred by Dr. Abramson. Dr. Abramson’s testimony developed the fact that the consultation with Dr. Forman was arranged at plaintiff’s request. Dr. Forman made further examinations on July 20th and November 9, 1954, on which latter date it was his opinion that plaintiff had fully recovered. This witness, called by plaintiff, further testified that he had discussed plaintiff’s case with him on December 7th and urged him to return to work. From the testimony of this witness it is conclusive that his findings, even on the occasion of his first examination, were substantially negative and his diagnosis of plaintiff’s condition was limited to a mild or moderate cervical sprain.
Plaintiff was examined by Dr. Daniel M. Kingsley of Alexandria, a specialist in orthopedic surgery, on November 15, 1954. This witness testified, on behalf of defendant, that he made a complete examination and found no orthopedic disability. He testified that he “deduced” at the time of the examination that plaintiff had suffered a muscle sprain in the neck and shoulders, but, at the time of examination, he could make no findings which would justify this diagnosis.
Plaintiff was examined on September 1, 1954 by Dr. F. P. Bordelon, Jr., a general practitioner of Marksville, who testified on behalf of plaintiff. Upon examination this doctor found that plaintiff had an epigastric hernia which, in his opinion, could have been caused by a strain. He referred plaintiff to Dr. Guiffre of Cottonport.
Dr. Elliott Roy, a general practitioner of Mansura, who testified on behalf of plaintiff, was first consulted by plaintiff on October 6, 1954. He put plaintiff under treatment for a gastric complaint. The witness testified that plaintiff had been taking dex-amyl, which medicine he believed to be the cause of plaintiff’s stomach queasiness, nausea and other symptoms relating to the upper g. i. tract. The witness testified that plaintiff had a history of coughing and chest pains, for which he had treated him some years before. This witness made no orthopedic examination nor did he make any examination for hernia. The witness testified that, in his opinion, the gastric disturbances of which plaintiff complained had no connection with any accident and concerned purely a medical problem. The witness further testified, and we think this to be most significant, that plaintiff did not, at any time, make any complaint or mention of a hernia, despite the fact that he treated him intermittently between the dates of November 2, 1954 and February 23, 1955.
The testimony of Dr. Phillip Guiffre, a general practitioner of Cottonport, who testified on behalf of plaintiff, has no particular significance. This witness examined plaintiff on February 11, 1955, and again on June 16, 1955, the day before trial of the case. On examination the witness found plaintiff to be suffering from a hernia, which he denominated an epiplocele, and was of the opinion that this affection was disabling to some extent.
On March 21, 1955, plaintiff was examined by Dr. H. H. Hardy, Jr., a physician and surgeon of Alexandria, whose testimony by deposition was offered on behalf of defendants. Dr. Hardy found plaintiff to be suffering from an epigastric hernia. The testimony of this witness necessarily was predicated upon the history of the two accidents of January and March, 1954, as related to him by the plaintiff. Dr. Hardy *787 testified positively that, in his opinion, the hernia was congenital. He further testified that after careful and thorough examination of plaintiff he was of the opinion that there was no evidence of any injury to the neck nor any residual effect therefrom. In answer to a specific question Dr. Hardy testified that he did not think plaintiff suffered from a ruptured disc, and, in his opinion, he was able to go back to work.
Plaintiff was examined by Dr. William M. Moody, a general practitioner of Baton Rouge, on June 14, 1955, three days prior to trial of this case, who testified by deposition on behalf of plaintiff. The major findings of the’ examination of this witness were evidence of a neuritis of the occipital nerves on the left side of the neck, evidence of a cervical-dorsal sprain, and the residuals of dorso-lumbar sprain with involvement of the paravertebral muscles, and the evidence of an epigastric hernia. As the result of these findings the witness estimated plaintiff’s disability at between ten and fifteen percent and recommended he be sent to the Oschner Clinic for examination and evaluation by a neurosurgeon.
Upon the basis of repeated examinations made by twelve doctors and their expressions of medical opinions and conclusions, we think it is abundantly clear that plaintiff has not only failed to establish his claim but, on the contrary, that the great weight of the expert testimony is convincing that he did not suffer total and permanent disability. As above stated, we feel assured that plaintiff sustained a neck and back sprain which disabled him for a period of time, but we find nothing in the record which would justify a holding that this disability continued beyond November 9, 1954, upon which date payments of compensation were discontinued. It is noted that the district judge in his written opinion made the statement that he was convinced beyond any doubt that plaintiff suffered from a herniated disc. We have carefully and repeatedly examined the record before us and are completely unable to find support for this conclusion.
In view of what we regard as the overwhelming preponderance of the medical testimony as opposed to plaintiff’s contention with specific reference to a factual medical question, we think it unnecessary to comment upon the testimony of lay witnesses.
Turning to consideration of plaintiff’s claims of disability arising from his epigas-tric hernia, we have experienced no difficulty in reaching the conclusion that plaintiff has abysmally failed to connect the causation or exaggeration of this hernia with either of the accidents alleged upon or to establish any relationship between this physical affection and his labor in the course of his employment.
In connection with our consideration of plaintiff’s physical disability resulting from the hernia, we are forcibly impressed with a number of unusual circumstances as reflected by the record. As we noted in the beginning of this opinion, plaintiff’s original petition was filed on February 8, 1955, in which petition his claims of disability were predicated exclusively upon the alleged back injuries received in the accident of March 31, 1954. The supplemental and amended petition filed April 11, 1955, contained the following allegations:
“Petitioner shows that simultaneously with seeking treatment for his other injuries sustained on March 31, 1954, as aforesaid, he has during this past year sought treatment repeatedly for what he thought was simply stomach pains; that he has recently learned that he suffers from a hernia.
******
“That on February 17, 1955, upon receipt of a medical report from his physician diagnosing petitioner’s disorders as hernia, petitioner immediately notified his employers through his attorney and mailed them a copy of said medical report.”
We say that these allegations are so strange as to appear inexplicable in view of the fact that the epigastric hernia was disclosed by an examination made by Dr. *788 Bordelon on September 1, 1954, and plaintiff’s testimony shows that he was informed of this diagnosis at the time. In other words, it is conclusively established that plaintiff knew of the existence of the epigas-tric hernia more than five months before filing his original petition and yet he asserted no demand and claimed no accidental injury with reference to the development of the hernia until the filing of his supplemental petition, which action was taken two months subsequent to the filing of the original petition.
It is indisputable that plaintiff did not sustain the hernia upon the occasion of the alleged accident of January 20, 1954, for the testimony of his examining physician, who treated him for several days following this incident, is positive on the point that, at that time, plaintiff did not have a hernia. Nor is there anything in the record which indicates that plaintiff sustained or exaggerated a pre-existing hernia by reason of the accident of March 31st. Plaintiff himself testified that he suffered no pain nor stomach trouble nor back pain during the period between his return to work three days following the accident of January 20th and the date of March 31st.
Even disregarding these circumstances, which throw considerable doubt upon the validity of this claim, we do not find the slightest evidence in the record which would establish any causal connection between plaintiff’s employment and the development of the hernia. On this point the district judge found that plaintiff did not have a hernia prior to March 31st, and, there being no evidence to show that plaintiff did not have a hernia at time of trial, the manner in which it was discovered was a matter of no consequence. While these findings, in themselves, are unquestionably correct, they do not sustain the conclusion that the hernia and the consequent disability were the result of plaintiff’s employment.
The issue tendered by this appeal presents, solely and simply, the determination of a factual question. Our study and consideration of the evidence has convinced us that the judgment of the lower court is manifestly erroneous.
For the reasons assigned the judgment from which appealed is annulled, avoided and reversed and there is now judgment in favor of defendants rejecting .plaintiff’s demands.